WILMAR COMPANY, A CORPORATION OF NEW JERSEY, PROSECUTOR, v. COUNTY OF CAMDEN ET AL., DEFENDANTS.

WILMAR COMPANY, A CORPORATION OF NEW JERSEY, PROSECUTOR, v. COUNTY OF CAMDEN ET AL., DEFENDANTS.

Argued October 8, 1930—Decided November 18, 1930.

Before Justices CAMPBELL and BODINE.

For the prosecutor, *Joseph H. Carr.*

For the defendants County of Camden, Board of Chosen Freeholders of Camden, Leslie H. Ewing, director, and Fred W. George, clerk of the board of chosen freeholders of Camden county, *Walter S. Keown.*

For the defendants, Central Airport, Incorporated, and Central Airport Development Company, *Edward L. Katzenbach* and *Albert E. Scheflin.*

The opinion of the court was delivered by

BODINE, J. These cases were argued together and the testimony taken on the rules was by stipulation used on the argument of the present writs.

The prosecutor owns one hundred and forty building lots abutting on Browning road in Camden county. The land was acquired in 1925, and adjoins the property of the Central Airport on the north.

The Central Airport land is shown upon a map (*Exhibit R*-1D), reduced and photostated. It is to be noted that the airport property is bounded on the west by the state highway sometimes called Crescent Boulevard, on the south by the Cooper river, on the east by Browning road, and on the north by Kaighn avenue and lands of the prosecutor.

Lands to the west of Crescent Boulevard and to the east of Browning road are owned by the same persons who own the airport. Capital investments amounting to more than $3,500,000 have been already placed in the airport project. It is the purpose of the promoters to so conform to the standards of the department of commerce of the United States that the airport will be one of the largest and safest in the world. Such a development serves the interests of the nation by facilitating the transportation of mails and by making aviation safe and expeditious.

The Camden county park commission quite properly have in mind the use of certain of the airport's lands along the Cooper river. This action will reduce the size of the airport to the detriment of aviation. The lands along the Cooper

river are suitable for boulevard and park purposes, and should, of course, be preserved for all time as a natural beauty spot. The lands the park commission contemplate taking lie between the proposed boulevard and the Cooper river. Park commission lands to the north of the proposed boulevard, by virtue of *Pamph. L.* 1930, *p.* 37, are to be conveyed to the airport.

Browning road divides the airport from lands to the east belonging to the owners of the airport. The plan worked out by the freeholders to meet the requirements of the park commission and the airport was to vacate a portion of Browning road about two thousand one hundred and fifty feet long and connect this road up with the proposed boulevard along the Cooper river. The change makes a road about a thousand feet longer for travel, but also brings the traveler along this roadway into the Cooper river boulevard. Obviously, the advantages are great to those using the airport and to those using the roadway.

The resolutions and agreements entered into to make the plan possible are assailed. The first resolution of the board of freeholders passed at the meeting of December 27th, 1929, vacates a portion of Browning road. The second resolution authorized the execution of a socalled escrow agreement. This agreement provides that the owners of the airport will dedicate land for a county road. Until the park commission boulevard is completed along the Cooper river, the use of Browning road, as now constituted, is to continue. Instruments sufficient to effect the carrying out of the plan were deposited by the landowners with the West Jersey Title and Guaranty Company.

It is apparent that the only result of the alteration is that the roadway becomes about a thousand feet longer, but there is the added advantage that it opens upon a public park system. The park commission secures valuable land for the boulevard project, and the airport secures suitable acreage in a single plot. The park commission is proceeding with an elaborate program, and the county is altering a certain road so as to fit in with the new scheme of things. The whole

improvement cannot be completed at once, but there must be a start. All the parties are bound to go on with their respective acts, and no rights are to accrue until the whole program is completed—a wise and legal precaution.

The resolution of the board of freeholders was, in part, as follows:

"Whereas, this board deems it advisable to do everything in its power to help the developers of the airport in question, in order that the city and county of Camden may have the advantage of having an airport, serving them and their vicinity, having the highest rating from the department of commerce of the United States of America, and for that reason has under consideration the vacation of a section of Browning road hereinafter referred to, and the establishment of a new road to take its place, to the east of the proposed airport site as aforesaid, the lots for said new development to be dedicated by the Central Airport Development Company as aforesaid."

".An alteration of a highway, as the expression is used, generally refers to a change in the course thereof, and therefore necessarily involves to some extent the establishment of a new highway and a vacation of the part of the old highway for which the substitution is made." 29 *Corp. Jur.* 503.

"Every board of chosen freeholders shall have power and authority * * * (c) To widen, *alter,* straighten, change the grade or location of, any road or highway under its control, or any part thereof." *Pamph. L.* 1918, *p.* 587; *Pamph. L.* 1929, *p.* 249.

Statutes authorizing the alteration of highways have universally been regarded as within the legislative power. 29 *Corp. Jur.* 504; *Parkhurst* v. *VanDerveer,* 48 *N. J. L.* 80.

"As to all public rights in the street, the municipal action was clearly legislative. It became judicial only in case it imposed an additional burden upon the land of the abutting owners." *Moore* v. *Haddonfield,* 62 *N. J. L.* 386, 389.

"The right of the state to destroy public improvements of this class without compensation is not limited by the constitution, and except for the statute, as expressed in the charter

of the city, this street could have been vacated without the slightest consideration of its effect upon any land lying along it, or the payment by the city of compensation to any landowners for damages." *Newark* v. *Hatt,* 79 *N. J. L.* 548, 550.

The statute under which the proceedings under review was taken makes no provision whatever for compensation.

"It is settled that the vacation of a street does not impair private rights, and in the absence of a statute giving damages, even a landowner who is injured is not entitled to compensation." *Borough of Verona* v. *Freeholders,* 88 *N. J. L.* 55, 58.

The argument is made that the proposed new dedication goes to a dead end until the park commission boulevard is constructed, and that hence there is special damage. Of course, if the proceeding is viewed as a whole, no such thing happens. The several agencies interested are co-operating to effect an improvement which will benefit the entire county and possibly the nation at large. The use of Browning road continues until the whole improvement is accomplished.

"Except in the instances where statutory provision to the contrary exists, the law gives no compensation for losses resulting from a valid surrender of public rights. And this is so because ours, being a government by the people, such surrenders can only be made by the people's representatives, and, as they generally hold office for short periods of time, and must exercise their power in the face of the people, it is assumed that their power, in this respect, will never be exercised, except when the public good imperatively demands it." *Dodge* v. *Pennsylvania Railroad Co.,* 43 *N. J. Eq.* 351, 356.

The consent of the township of Pensauken does provide that the old road shall be kept open till the new section of the road and the boulevard are completed. This provision is not only usual but essential to the interest of all concerned.

There is nothing to suggest that the alteration was to subserve a private purpose. *Kean* v. *Elizabeth,* 54 *N. J. L.* 462; *affirmed,* 55 *Id.* 337.

The proceeding will not be set aside, and the writ will be dismissed.